# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        Plaintiff,

  v.                                      Case No. 23-CR-210

**KRONE NOLAN**
        Defendant.

## DECISION AND ORDER

The government charged defendant Krone Nolan with possessing a firearm as a felon and possessing controlled substances with intent to distribute. Defendant filed a motion to suppress challenging the traffic stop pursuant to which police officers discovered the contraband. The magistrate judge handling pre-trial proceedings held an evidentiary hearing, receiving testimony from the two involved officers as well as exhibits including dash cam footage of the stop, then issued a recommendation that the motion be denied. Defendant objects to the recommendation. My review is de novo. Fed. R. Crim. P. 59(b).

## I. FACTS AND BACKGROUND

The magistrate judge's report sets forth the circumstances of the stop:

On June 15, 2023, Milwaukee Police Officers Zachary Szalacinski and Michael Witkowski were on patrol together in a marked squad when they saw a red Dodge Journey leave a gas station at a high rate of speed. The car appeared to be speeding and the officers pulled in behind it. Once behind it they noticed that the driver's side brake light was covered in red duct tape and was not lighting up when the car stopped. They decided to stop the car but waited until they got out of a construction zone and there was room for the car to pull over to the side of the road.

After the officers activated the lights and sirens on the squad car, the Journey stopped and the officers approached the driver, whom they identified as the

defendant, Krone Nolan. The officers saw and smelled suspected marijuana, which led to a search of the car and the recovery of the evidence that forms the basis for the two charges against Nolan.

(R. 35 at 1-2, footnote omitted.) The officers also issued defendant a citation pursuant to Wis. Admin. Code Trans. § 305.15(2) for the defective stop lamp.[1] (4/10/24 Hr'g Tr. at 19, 53-54; Def.'s Ex. 6.)

Before the magistrate judge, defendant argued that, even if his driver's side stop lamp was not working properly, his vehicle still complied with Wisconsin law since the passenger side and high-mounted stop lamps <u>were</u> working. Reviewing the language of the pertinent statute and regulations, the magistrate judge rejected this argument, concluding that in vehicles equipped with a passenger side stop lamp, a driver's side stop lamp, and an additional high-mounted stop lamp, <u>all three</u> must be unobstructed and functional. (R. 35 at 3-4.)

Defendant further argued, based on looped clips he created from the dash cam footage, that his driver's side stop lamp <u>did</u> illuminate. (R. 35 at 4.) The magistrate judge rejected this argument as well:

> Watching each clip closely it is possible to detect a faint change in the driver's side stop light at the moment the passenger-side and high-mounted stop lamps illuminate. Thus, it appears that behind the tape there was a lamp that lit up when the brakes were applied.
>
> But it is only by closely and repeatedly observing the change on the driver's side at the moment that the brakes are applied that it is possible to detect any illumination on the driver's side. The court watched the video that the government submitted in response to Nolan's motion many times and never detected any change in the driver's side stop lamp. In real time the officers had at least reasonable suspicion to stop the Journey for a non-functioning driver's side stop lamp.

---

[1] Consistent with the regulatory terminology, I will in this decision refer to "stop lamps" rather than "brake lights."

2

(R. 35 at 4-5.) In any event, the magistrate judge concluded, even if the officers should have been able to detect the subtle illumination of the driver's side stop lamp, they still had grounds to stop defendant because the lamp was covered by tape, contrary to a Wisconsin regulation providing that stop lamp lenses may not be covered or obscured by any object or material. (R. 35 at 5.)

## II. FOURTH AMENDMENT STANDARDS

The Fourth Amendment permits police to conduct a traffic stop based on reasonable suspicion of a traffic violation. United States v. Jackson, 962 F.3d 353, 357 (7th Cir. 2020) "Even the reasonable belief that a driver committed a minor traffic infraction will support a stop." Id. The government bears the burden of proving that reasonable suspicion supported the traffic stop. Id. Although a mere hunch does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause. Id. Reasonable suspicion is an objective standard, based on the facts available to the officers at the time of the stop. Id. Because the standard is objective, the officers' subjective motivations for stopping a suspect are not relevant. Id. at 358. Nor is the inquiry controlled by the officers' subjective understanding of the law; a mistake of law, if objectively reasonable, can provide reasonable suspicion for a stop. Heien v. North Carolina, 574 U.S. 54, 66 (2014).

## III. DISCUSSION

### A.  Requirements of Wisconsin Vehicle Equipment Law

Defendant first objects to the magistrate judge's interpretation of Wisconsin law on stop lamps. (R. 36 at 4-6.) Wisconsin's stop lamp statute provides:

3

(1) No person shall operate a motor vehicle . . . upon a highway unless such motor vehicle . . . is equipped with at least one stop lamp mounted on the rear and meeting the specifications set forth in this section. . . . A stop lamp may be incorporated with a tail lamp. No vehicle originally equipped at the time of manufacture and sale with 2 stop lamps shall be operated upon a highway unless both such lamps are in good working order.

(2) A stop lamp shall be so constructed as to be actuated upon application of the service or foot brake or separate trailer brake and shall emit a red or amber light plainly visible and understandable from all distances up to 300 feet to the rear during normal sunlight when viewed from the driver's seat of the vehicle following.

Wis. Stat. § 347.14 ("Stop lamps").

The Wisconsin Administrative Code addresses vehicles equipped with a third, high-mounted stop lamp, providing this definition:

"High-mounted stop lamp" means an additional lamp of a stop lamp system giving a brake-actuated, steady warning light to the rear of the vehicle intended to provide a signal to both the operator of the next following vehicle and through intervening vehicles to the operators of the other following vehicles.

Wis. Admin. Code Trans. § 305.05(20). The Code further provides:

(1) Every automobile originally manufactured commencing with the 1950 models, every light truck or motor home originally manufactured commencing with the 1955 models, and every homemade or reconstructed vehicle registered on or after January 1, 1975, shall be equipped with at least 2 stop lamps. All other motor vehicles shall be equipped with at least one stop lamp.

(2) The stop lamps of every vehicle shall be maintained in proper working condition and in conformity with this section and s. 347.14, Stats.

(3) All wiring and connections shall be maintained in good condition.

(4) All stop lamp lenses shall be installed and maintained in proper condition and may not be covered or obscured by any object or material.

(5)
  (a) The high-mounted stop lamp of every motor vehicle originally manufactured with a high-mounted stop lamp shall be maintained in proper working condition and may not be covered or obscured by any object or material. This paragraph does not apply to the temporary covering or obscuring of a high mounted stop

4

lamp by property carried on or in the motor vehicle or in a trailer towed by the motor vehicle. . . .

Wis. Admin. Code Trans. § 305.15 ("Stop lamps").

Defendant reads these provisions to require: (1) that vehicles manufactured with more than one stop lamp must have at least two stop lamps working; and (2) that the high-mounted stop lamp (if present) must be one of the two. (R. 36 at 4, 6; R. 40 at 4-5.) He contends that the statute and the Code provide that all three (the two rear/side lamps and the high-mounted lamp) are "stop lamps," and § 347.14 does not specify which two lamps must be functional. (R. 36 at 5-6; R. 40 at 4.) He concludes that because his vehicle had two functional lamps, one of which was the high-mounted lamp, there was no equipment violation. (R. 40 at 5.)

Defendant cites no Wisconsin caselaw supporting this construction, and the most natural reading of the relevant provisions supports the magistrate judge's conclusion. The Wisconsin Administrative Code defines a high-mounted stop lamp as "an additional lamp of a stop lamp system," Wis. Admin. Code Trans. § 305.05(20) (emphasis added), and nothing in the Code suggests that such a lamp may substitute for the "stop lamps" (plural) referenced in Wis. Admin. Code Trans. § 305.15(2) and Wis. Stat. § 347.14(1). That Trans. § 305.15(5)(a) separately discusses the requirements for a high-mounted stop lamp also suggests that such a lamp is not interchangeable with the lower lamps referenced in Trans. § 305.15(2) and Wis. Stat. § 347.14(1). Finally, the Code makes clear that its requirements supplement—but do not modify—the State's vehicle equipment statutes. See Wis. Admin. Code Trans. § 305.01(1) ("The purpose of this chapter is to prescribe minimum equipment requirements for vehicles and standards for the equipment used on vehicles."); Wis. Admin. Code Trans. § 305.02(7) ("Nothing in this chapter is intended to modify the provisions of ch. 347, Stats., and all vehicles

5

to which this chapter applies shall also comply with the requirements of ch. 347, Stats.").

At the very least, it was objectively reasonable for the officers to believe that a malfunctioning driver's side lamp violated Wisconsin law. See Heien, 574 U.S. at 57 (rejecting Fourth Amendment challenge where officer reasonably believed state law required two functioning brake lights, not just one, as a state court later concluded). The parties do not discuss Heien in the objection briefing, but the issue was briefed before the magistrate judge. (R. 20 at 3; R. 33 at 8-14; R. 34 at 4, 7-8.) There, defendant argued that the officers' understanding of Wisconsin law was not reasonable under State v. Brown, 355 Wis. 2d 668, 688 (2014), but that case considered whether a single unlit bulb within a "tail lamp" meant the lamp was not in "good working order" for purposes of Wis. Stat. § 347.13(1).[2] This case concerns "stop lamps," which are governed by different provisions, set out above.

While I have found no case directly on point, Wisconsin courts have rejected the argument that the law requires only two of three stop lamps be functional. For instance, in State v. Cross, No. 2018AP1207-CR, 2019 Wisc. App. LEXIS 1001, at *5 (Ct. App. Feb. 12, 2019), the court of appeals held that:

> Wis. Admin. Code § TRANS 305.15(5)(a) does not conflict with Wis. Stat. § 347.14(1). Both the statute and the regulation apply to a vehicle—like Cross's pickup truck—that has both a high-mounted stop lamp and two lower stop lamps. The statute requires the lower stop lamps to be in good working order. The regulation, in turn, provides that a high-mounted stop lamp, if originally present on the vehicle, must be kept in working condition. Nothing in the statute states—or even implies—that as long as a vehicle's lower stop lamps work, its high-mounted stop lamp need not be in working condition. The statute simply does not address high-mounted stop lamps. As such, § TRANS 305.15(5)(a)

---

[2]The Brown court also held that a lawful stop cannot be predicated on a mistake of law. The Wisconsin supreme court overruled this part of the decision in State v. Houghton, 364 Wis. 2d 234 (2015), following the lead of the United States Supreme Court in Heien and holding that an objectively reasonable mistake of law can support a traffic stop.

6

does not contradict the statute; it merely adds another requirement beyond the statutory requirement regarding lower stop lamps.

The court of appeals rejected a similar argument in State v. Moore, No. 2008AP1463-CR, 2009 Wisc. App. LEXIS 575, at *5-6 (Ct. App. July 28, 2009):

> Moore argues [Trooper] Brown did not have reasonable suspicion to initiate a traffic stop because it is not unlawful to operate a car with a defective center deck brake light as long as the other two brake lights are working. This assertion is directly contrary to the Wisconsin Administrative Code. WISCONSIN ADMIN. CODE § TRANS 305.15(5)(a) (May 2004), provides: "The high-mounted stop lamp of every motor vehicle originally manufactured with a high-mounted stop lamp shall be maintained in proper working condition and may not be covered or obscured by any object or material."
>
> Brown stopped Moore after observing he was operating a vehicle with a defective brake light in violation of WIS. ADMIN. CODE § TRANS 305.15(5)(a). Administrative rules have "the force and effect of law." Wisconsin Citizens Concerned for Cranes & Doves v. DNR, 2004 WI 40, P5, n.5, 270 Wis. 2d 318, 677 N.W.2d 612. Therefore, Moore's defective brake light provided an adequate basis for Brown to believe Moore was violating non-criminal traffic laws.

See also State v. Kleinschmidt, No. 2020AP881-CR, 2021 Wisc. App. LEXIS 919, at *5-6 (Ct. App. Oct. 13, 2021) (upholding stop for unilluminated high-mounted stop lamp, despite the officer's citation of Wis. Stat. § 347.14(1), rather than the applicable Code provision).

In Cross, the court also rejected the argument, which defendant presses in reply (R. 40 at 4), that requiring three functional lamps exceeds what the legislature mandated when it enacted § 347.14:

> Wis. Admin. Code § TRANS 305.15(5)(a) does not conflict with Wis. Stat. § 347.14(1). It simply adds a requirement pertaining to a type of safety equipment—i.e., high-mounted stop lamps—that the statute does not address. Cross cites no authority supporting the proposition that the DOT lacks authority to promulgate regulations that add to, but do not conflict with, statutory requirements.

2019 Wisc. App. LEXIS 1001, at *5-6.

In sum, the available caselaw suggests Wisconsin's judiciary would not accept

7

defendant's construction of the stop lamp rules. Certainly, "a reasonable judge could agree with the officer's view" of the law. Heien, 574 U.S. at 70 (Kagan, J., concurring).

B.     **Compliance With Wisconsin Equipment Requirements**

Defendant next argues that, even if Wisconsin law does require three functional lamps, as the magistrate judge concluded, his lamps sufficed. (R. 36 at 6.) He contends that, while his driver's side lamp was damaged, the red tape over the cover did not prevent light from shining through. (R. 36 at 6-7.) In other words, although the lamp was not in perfect condition, it was still in "good working order" as required by Wis. Admin. Code Trans. § 305.15(2) and Wis. Stat. § 347.14(1). (R. 36 at 7, citing Brown, 355 Wis. 2d at 686 (defining the phrase "good working order" to mean "functioning for the intended purpose").) Defendant further contends that, while the officers claimed the driver's side stop lamp did not turn on at all, the evidence contradicts their allegations. (R. 36 at 7-8.) He concludes that because all three of his stop lamps lit up when he applied the brakes, they were functioning for their intended purpose and thus compliant with the law. (R. 36 at 8.)

Defendant criticizes the magistrate judge for relying too heavily on his own observations and conclusions from the 30-second dash cam clip submitted by the government. (R. 36 at 8.) As indicated above, after closely watching the two looped clips presented by the defense, the magistrate judge detected "a faint change in the driver's side stop light." (R. 35 at 4.) However, he never detected any change in that lamp during many views of the government's video clip and thus concluded that, in real time, the officers had reasonable suspicion for a stop. (R. 35 at 5.) I, too, have reviewed the clips submitted by the defense (Def.'s Ex. 11, 12) and the government (Govt.'s Ex. 1), and I share the magistrate judge's impression. Defendant cites no authority for the proposition that it is improper for the court to review the dash cam footage

8

depicting what the officers saw in real time. Cf. United States v. Norville, 43 F.4th 680, 682 (7th Cir. 2022) ("[A] video record of the events at issue can evaporate any factual dispute that would otherwise exist, as courts view the facts in the light depicted by the videotape.") (internal quote marks omitted).

Defendant notes that the officers followed his car for more than 14 blocks before the stop and complains that the officers failed to turn their squad camera on until just before pulling him over, depriving the court of additional footage of the allegedly defective stop lamp, as well as violating Milwaukee Police Department (MPD) standard operating procedures. (R. 36 at 2-3, 6, 9; R. 40 at 2, 3.) However, these observations provide no basis for suppression.

First, the officers consistently and credibly explained the reason for the delay in making the stop. Officer Szalacinski testified: "We didn't conduct a traffic stop at that point because there was no room on the road due to the construction." (Hr'g Tr. at 9:18-19.) Officer Witkowski similarly testified: "Due to the construction, we were not able to safely have a spot to conduct a traffic stop and pull over. . . . When he went east on Fond du Lac, there was no construction in that area, and we were able to safely conduct a traffic stop for him to pull over." (Hr'g Tr. at 74:8-15.) The dash cam video confirms that construction had narrowed the road to one lane, and defendant provides no basis for rejecting the officers' explanation. Defendant argues at various points in reply that the officers' failure to activate the dash cam weakens their credibility (R. 40 at 1, 2, 5-6), but he does not explain how this undermines their central claim regarding the basis for and timing of the stop.

Second, "even if [MPD policy] required officers to activate dash cameras after following a citizen for more than two blocks, failure by an officer to follow such a requirement would not give rise to a constitutional violation." Augusta v. Winbigler, No. 4:16-CV-04115-SLD-JEH, 2017

9

U.S. Dist. LEXIS 99171, at *7 (C.D. Ill. Mar. 17, 2017), adopted, 2017 U.S. Dist. LEXIS 98009 (C.D. Ill. June 26, 2017). This is so because the Fourth Amendment's meaning does not change based on "local law enforcement practices—even practices set by rule." Virginia v. Moore, 553 U.S. 164, 172 (2008).

Defendant contends that the evidence refutes the officers' claim that the driver's side stop lamp did not "turn on" (R. 36 at 9; R. 40 at 3), but the officers never said that the bulbs within the lamp did not turn on; rather, the officers consistently testified that they could not see any light emitting from the lamp. Officer Szalacinski stated: "We observed the drive's [sic] side brake lamp was not working due to duck tape. It was not illuminated because there was duck tape over it, which was preventing it from being illuminated." (Hr'g Tr. at 11:1-3.) He further testified that he had no "difficulty seeing the red light being emitted" from the high-mounted and passenger side stop lamps, but there was no "red light visible" from the driver's side lamp. (Hr'g Tr. at 15:1-14.) On cross-examination, counsel asked Szalacinski:

Q. So is your testimony today then that the light wasn't working at all?

A. It wasn't illuminated.

Q. Like it didn't turn on?

A. I didn't see it illuminated at all.

(Hr'g Tr. at 56:3-7.)

For his part, Officer Witkowski testified that "the high mount lamp is illuminated. Passenger side is illuminated. The driver's side is not illuminated." (Hr'g Tr. at 75:1-2.) He explained that the driver's side lamp did not illuminate because it was impermissibly covered by red duct tape. (Hr'g Tr. at 75:5-11.) Witkowski, who was driving the police squad car (Hr'g Tr. at 68), further testified that he had a clear view of the stop lamps, from roughly five to ten

10

feet away, and he was not "able to plainly see any red light being emitted from the driver's side stop lamp." (Hr'g Tr. at 75:21-23.) This is all the officers needed to obtain reasonable suspicion of a violation of Wis. Stat. § 347.14(2), which requires stops lamps "emit a red or amber light plainly visible and understandable from all distances up to 300 feet to the rear during normal sunlight when viewed from the driver's seat of the vehicle following." That a court, viewing looped clips of two snippets from the dash cam video, might later conclude that defendant's lamp <u>did</u> emit light does not mean the officers lacked grounds for an investigatory stop. See United States v. Muriel, 418 F.3d 720, 724 (7th Cir. 2005) (upholding stop for tailgating, even though video evidence revealed it was a close question whether the defendant was actually following too closely, because the issue for a court in deciding a motion to suppress is whether the officers had probable cause to believe a traffic violation occurred, not whether the defendant actually committed the violation); United States v. Cashman, 216 F.3d 582, 587 (7th Cir. 2000):

> The propriety of the traffic stop does not depend . . . on whether Cashman was actually guilty of committing a traffic offense by driving a vehicle with an excessively cracked windshield. The pertinent question instead is whether it was reasonable for Trooper Spetz to believe that the windshield was cracked to an impermissible degree.

See also Heien, 574 U.S. at 67 ("Heien is not appealing a brake-light ticket; he is appealing a cocaine-trafficking conviction as to which there is no asserted mistake of fact or law.").

On cross-examination of Officer Witkowski, counsel noted that the provision referenced in the citation requires stop lamps be "in proper working condition," which means "functions to fulfill its intended purpose." (Hr'g Tr. at 88:3-7.) They then had the following exchange:

Q. Your testimony today was that it did not illuminate at all?

A. Correct.

11

> Q. You also testified that it was prohibited or it was not permissible, not legal, to have tape over the brake light?
>
> A. Correct.
>
> Q. Where do you get that from?
>
> A. The statute of the stop lamps.
>
> Q. The statute of stop lamps says that you can't have tape on it?
>
> A. Correct, you cannot have anything over the stop lamp covering it.

(Hr'g Tr. at 88:9-19.)

This leads to the magistrate judge's alternate finding: the officers had cause to stop defendant because the driver's stop side lamp was covered by red tape. It is irrelevant that Officer Witkowski thought this prohibition came from the statute, rather than the Code, or that the citation the officers issued references Code Trans. § 305.15(2) rather than § 305.15(4). See United States v. Dumas, 94 F.3d 286, 290 n.2 (7th Cir. 1996) (stating that "an officer's subjective intention in making a traffic stop is of no consequence for the Fourth Amendment analysis, which turns solely on the objective reasonableness of the stop").

The Code states: "All stop lamp lenses shall be installed and maintained in proper condition and may not be covered or obscured by any object or material." Wis. Admin. Code Trans. § 305.15(4). The magistrate judge cited dictionary definitions of the term "obscured" relating to limitations on the emanation of light, finding that the tape made it exceptionally difficult to detect any light coming from defendant's driver's side stop lamp. (R. 35 at 5.) In the course of arguing that his damaged driver's side lamp nevertheless fulfilled its intended purpose, defendant provides his own definition of "obscured"—"to prevent something from being seen or heard"—and asserts that the tape did not prevent light from shining through. (R.

12

36 at 7.) The officers consistently and credibly testified that they could not see the lamp illuminate due to the tape, which would appear to satisfy either definition. It was at the very least objectively reasonable for the officers to believe that the tape "obscured" the lamp, contrary to Wisconsin law. Moreover, the regulation also says a stop lamp lens may not be "covered" by any material, which this one plainly was.

Defendant offers no direct response to the magistrate judge's alternate finding based on Trans. § 305.15(4). For this reason, as well, his motion fails.

* * *

For the foregoing reasons and those stated by the magistrate judge, the stop was valid. Because the officers permissibly pulled defendant over for a stop lamp violation, I need not address the government's alternate argument that the officers could have done so based on an alleged speeding violation. (R. 38 at 5.)

### IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 35) is adopted, and defendant's motion to suppress (R. 20) is denied.

Dated at Milwaukee, Wisconsin, this 24th day of June, 2024.

    /s/ Lynn Adelman
    LYNN ADELMAN
    District Judge